UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MULTI HOLSTERS, LLC,

        Plaintiff,

                              CASE NO. 17-10438
v.                              HON. GEORGE CARAM STEEH

TAC PRO INC. and
STEVEN MINUSKIN,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO ABSTAIN (Doc. 4) AND ADMINISTRATIVELY CLOSING CASE**

      Plaintiff Multi Holsters, LCC (Multi Holsters) alleges various fraud and trade secret violations under Michigan statutory and common law, as well as federal law, against defendant Tac Pro Inc. and its president, Steven Minuskin (collectively "Defendants"), arising out of a failed joint venture between the parties. Currently, related litigation between these same parties and others is pending in Ontario Superior Court of Justice, Canada. For this reason, Defendants move to dismiss this action under the *Colorado River* abstention doctrine. Because all of Multi Holsters claims in this federal lawsuit arise out of the same alleged material facts as those pled in the ongoing Ontario litigation, the court will stay this case pending

- 1 -

resolution of the Ontario action. Oral argument was held on September 14, 2017, and informs the court's decision.

## I. Factual Background

The facts as summarized below are garnered from the Statement of Claim and Counterclaim filed in the related litigation pending in the Ontario Superior Court and from the federal Complaint pending here.

Plaintiff Multi Holsters is a Michigan company which designs, manufactures, and distributes holsters for handguns using a product known as Kydex. Multi Holsters is located in Plymouth, Michigan. Multi Holsters is owned by Judy Catner. Judy and her husband, Anthony Catner, are the directors and shareholders of Multi Holsters. Mr. Catner started the business from his basement in 2010. Multi Molds was incorporated in February, 2014 and is associated with Multi Holsters. Both operate out of the same facility in Plymouth, Michigan. Multi Molds manufactures and sells molds for the manufacture of plastic holsters for pistols.

Defendant Tac Pro is a Canadian company that manufactures and sells plastic pistol holsters. Defendant Steven Minuskin is the president of Tac Pro. Because of strict gun laws in Canada, the American market is much more favorable for pistol holsters and gun related products.

Beginning in August, 2013, Minuskin contacted Mr. Catner to discuss the possibility of a joint venture by which Multi Holsters would use Tac Pro's confidential process to manufacture plastic pistol holders. Tac Pro and Multi Holsters entered into a Confidentiality and Non-Disclosure Agreement on September 26, 2013 prohibiting the disclosure of confidential information. The Non-Disclosure Agreement also contains a choice-of-law provision:

> 9. **Governing Law**: This agreement shall be governed by and enforced in accordance with the laws of the Province of Ontario and shall be binding upon the Recipient in Canada, The United States and worldwide.

(Doc. 4-3 at PgID 69). From September 26, 2013 until July 24, 2014, Minuskin claims he communicated most of the confidential processes to the Catners, orally and in writing, culminating in a visit by the Catners to the Tac Pro facility in Canada on March 1, 2014. Multi Holsters, on the other hand, claims that the visit to Tac Pro's facility on March 1, 2014 was a bust as they were forced to remain seated on two stools far from the manufacturing process, and that the machinery was covered by tarps, shielding them from viewing anything that would inform them about Tac Pro's confidential processes. Multi Holsters claims it never learned any of Tac Pro's purported confidential processes.

Negotiations between Tac Pro and Multi Holsters broke down in July, 2014. On October 16, 2014, Tac Pro filed suit in the Superior Court of Justice in Ontario, Canada against Multi Holsters, Multi Molds, and Anthony and July Catner. In the Ontario lawsuit, Tac Pro alleges that Multi Holsters and the related company, Multi Molds, have been using Tac Pro's secret processing information to make plastic holsters, molds for making guns, and other plastic related products. Tac Pro further alleges that Multi Holsters has been using pictures of Tac Pro's holsters on the internet and in other promotional materials representing that the products are its own. Further, Tac Pro claims that its holsters have appeared in YouTube videos and gun magazine articles under the Multi Holster name, and alleges that Multi Holsters has sent Tac Pro holsters to gun accessory reviewers claiming the products as its own.

On January 13, 2015, Multi Holsters filed a counterclaim in the pending Ontario lawsuit against Tac Pro and Minuskin. Multi Holsters alleges that it shared confidential communications with Minuskin for several months before he attended its business premises and observed firsthand its confidential manufacturing processes, designs, and potential future products. Multi Holsters claims Minuskin was able to visually inspect all of its machinery and equipment and spoke with all of its employees on the

floor. Multi Holsters claims Tac Pro and Minuskin violated their Confidentiality and Non-Competition Agreement, executed in the summer of 2013,[1] by using its confidential processes to manufacture and market Kydex holsters. Specifically, Multi Holsters claims that Tac Pro and Minuskin are using Multi Holster's confidential information, design processes, and manufacturing and marketing processes to sell Kydex holsters in America.

Multi Holster's counterclaim against Tac Pro and Minuskin alleges breach of confidence, breach of fiduciary duty, and arguably misappropriation of trade secrets. It also seeks injunctive relief to enjoin Tac Pro from manufacturing or marketing Kydex holsters and using Multi Holster's proprietary and confidential processes.

On February 10, 2017, Multi Holsters filed the instant lawsuit against Tac Pro and Minuskin in this court. The underlying factual allegations are essentially identical to those in the pending Ontario counterclaim, although the theories of recovery differ slightly. Multi Holsters has not sued for breach of contract or breach of fiduciary duty here, but asserts nine separate counts including five common law fraud claims under Michigan

---

[1] Multi Holster's Statement of Claim in the Ontario litigation states that the Confidentiality and Non-Competition Agreement was executed in the summer of 2012 (Doc. 4-4 at PgID 86, ¶ 41); however, Multi Holster's papers filed in the federal suit state that the Agreement was signed in the summer of 2013. (Doc. 6 at PgID 100).

law, as well as statutory claims for violations of trade secrets under Michigan and federal law, unfair competition under Michigan common law, and tortious interference with business relationships. Specifically, the counts are as follows: (1) fraudulent misrepresentation, (2) fraudulent inducement, (3) silent fraud, (4) innocent misrepresentation, (5) negligent misrepresentation, (6) tortious interference with business relationships, (7) misappropriation of trade secrets in violation of Michigan's Uniform Trade Secret Act ("MUTSA"), MCL § 445.1902 et seq., (8) violations of the Defend Trade Secret Act in violation of 18 U.S.C. § 1836(b)(3)(C), and (9) unfair competition.

## II. Standard of Law

A federal court has a "virtually unflagging obligation" to exercise the jurisdiction bestowed upon it. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18 (1976). This obligation should be avoided in only a few "extraordinary and narrow" circumstances. *Id.* Under the *Colorado River* doctrine, the federal court may decline to exercise jurisdiction where a parallel state matter is pending. *Id.* Federal courts have expanded the *Colorado River* abstention doctrine to apply when parallel proceedings are ongoing in a foreign court. *Grammar, Inc. v. Custom Foam Sys., Ltd.*, 482 F. Supp. 2d 853, 856–57 (E.D. Mich. 2007)

(citing *Finova Capital Corp. v. Ryan Helicopters USA, Inc.,* 180 F.3d 896, 898 (7th Cir.1999)).

The threshold inquiry in deciding whether to abstain in deference to ongoing proceedings in a foreign court is whether the actions are truly parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). To answer that question, the court must find that the two proceedings are "substantially similar." *Id.* The parties need not be identical as long as they are substantially similar, and the two suits involve the same allegations as to the same material facts. *Id.* at 340. Although the cases need not be identical, the resolution of the foreign court action must provide complete relief for the federal action. *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994); *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990); *Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 856-57 (S.D. Ohio 2002). "Broadly, the relevant inquiry is whether resolution on the state case will resolve the contested issues in the federal action." *Cass River Farms, LLC. v. Hausbeck Pickle Co.*, No. 16-cv-12269, 2016 WL 5930493, at *2 (E.D. Mich. Oct. 12, 2016).

Once the court determines that the two actions are indeed parallel, the court considers the eight combined factors, the first five identified by the Court in *Colorado River,* and the last three added by the Court in *Moses H.*

*Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 23-26 (1983). These include:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 206–07 (6th Cir. 2001) (quoting *Romine,* 160 F.3d at 340–41). These factors, however, are not to be applied mechanically, and no one factor is determinative. "Rather, they require 'a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction.'" *Baskin*, 15 F.3d at 571 (quoting *Moses H. Cone*, 460 U.S. at 16).

While some courts considering *Colorado River* abstention in the international context have applied a slightly different analysis, those factors are essentially the same: "the similarity of the parties, 'the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States,

and the connection between the litigation and the foreign jurisdiction.'" *Detroit Int'l Bridge Co. v. Gov't of Canada*, 78 F. Supp. 3d 117, 120 (D.D.C. 2015) (quoting *Royal & Sun Alliance Ins. Co. of Can. v. Century Intern. Arms, Inc.,* 466 F.3d 88, 94 (2d Cir. 2006)). "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Id. (*quoting *Royal & Sun Alliance,* 466 F.3d at 94). All of these interests are vindicated by entry of a stay in this matter.

Because the parties have relied upon the factors outlined by the Sixth Circuit in *Romine* as used in the context of abstention in favor of state court proceedings, the court does so as well. The court notes that its conclusion would be the same if the court applied the multi-factor test used in international abstention cases outlined above as the parties are substantially similar, the issues are substantially similar, the Canadian action was filed over two years before the federal lawsuit, Multi Holsters has shown no prejudice to litigating this matter in Ontario, and given that the parties agreed Ontario law would govern their Confidentiality and Non-Disclosure Agreement, Ontario has a greater connection to the lawsuit than either Michigan or the United States.

### III. Analysis

#### A. The Federal and Foreign Lawsuit are Parallel

In order for the two actions to be considered parallel, they must be substantially similar, not identical. *Romine*, 160 F.3d at 340. In the instant matter, the two cases arise out of the same material facts, although the theories of recovery are slightly different. There is a modest difference in the named parties between the two actions. Multi Molds and the Catners are named defendants in the Ontario litigation, but none of those persons are parties in the federal lawsuit. But all of the parties named in the federal lawsuit are named in the Ontario litigation. Thus, the Ontario lawsuit is broader than the federal lawsuit. As such, any decision in the Ontario lawsuit would be binding on all of the parties in this action.

More importantly here, the court evaluates the underlying factual allegations of the two suits. For the reasons discussed below, Multi Holster's claims are parallel to the claims pending in Ontario.

In the Ontario litigation, both the claim and counterclaim allege breach of confidence and breach of fiduciary duty claims arising out of the parties' Confidentiality and Non-Disclosure Agreement. In Multi Holster's counterclaim in the foreign proceedings, Multi Holsters alleges misappropriation by Tac Pro and Minuskin of trade secrets and proprietary

and confidential information of Multi Holsters. In this federal lawsuit, Multi Holster's fraud claims, breach of MUTSA and the federal Defend Trade Secret Act, unfair competition claim, and tortious interference with business relationships claim arise out of the same material factual allegations as the Ontario case.

Plaintiff alleges its tortious interference with business relationships claim arises out of conduct taking place after the Ontario lawsuit was filed, and thus is not parallel. The tortious interference with business relationships claim in the federal lawsuit alleges that Defendants have been defaming Multi Holsters in the firearms market since the Ontario lawsuit was filed by spreading false statements about Multi Holsters to potential customers, industry professionals, and journalists; and by falsely accusing Multi Holsters on public and private forums of participating in 'bait and switch' scams whereby it passes off Tac Pro holsters as its own. (Complaint, ¶¶ 40, 75).

To establish tortious interference with business relations, defendant must show: "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant

inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Crestmark Bank v. Electrolux Home Prod., Inc.*, 155 F. Supp. 3d 723, 746 (E.D. Mich. 2016) (quoting *Health Call of Detroit v. Atrium Home & Health Care Serv.*, 268 Mich. App. 83, 89–90 (2005)); *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003)). The third element requires "that the interference was either (1) a *per se* wrongful act or (2) a lawful act done 'with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *Id.* (quoting *Wausau Underwriters Ins.*, 323 F.3d at 404). Courts will not find tortious interference with business relationships "[w]here the defendant's actions were motivated by legitimate business reasons." *Id.* (quoting *BPS Clinical Labs. v. Blue Cross and Blue Shield of Mich.,* 217 Mich. App. 687, 699 (1996)).

In this case, plaintiff's tortious interference with business relationships claim is also inextricably linked to the claims pending in Ontario. Should defendants prove that plaintiff breached its confidentiality agreement and engaged in misappropriation of trade secrets, then defendants would have a defense to plaintiff's claim that defendants are defaming plaintiff in the marketplace in the context of its relationships with its customers.

Principles of collateral estoppel and res judicata support the conclusion that the two matters are parallel. In support of its motion to dismiss based on abstention, Defendants rely upon a letter drafted by the Canadian attorney who represents Tac Pro and Minuskin in the Ontario litigation. (Doc. 4-5 at PgID 90-91). According to his letter, there is a doctrine of res judicata in Ontario, much like the doctrine under federal and state law. Res Judicata in Ontario consists of action estoppel and issue estoppel. Cause of action estoppel bars litigation of any claim a plaintiff could have or should have raised against the defendant arising from events that were the subject of an earlier claim, whether or not those claims were raised. *Id.* If the claim advanced was not asserted in the prior proceeding but reasonably should or could have been raised, the claim will be barred.

Also, issue estoppel may be invoked when three conditions are met: (1) the issue must be the same as the one decided in the prior decision, (2) the prior judicial decision must have been final, and (3) the parties to both proceedings must be the same or their privies. *Id.* Under the doctrine of res judicata, upon a final decision in the Ontario action, Multi Holsters would be barred from litigating all of their claims filed in the federal lawsuit, as all of those claims arise from the same events that were the subject of

their counterclaim, and could and should have been raised in the foreign proceeding.

In *Grammar*, defendant sued plaintiff in Ontario for breach of contract and for negligent and intentional misrepresentations. 482 F. Supp. 2d at 855. Plaintiff did not file a counterclaim but instead brought a new suit in federal court seeking a declaratory judgment that it had not breached any obligations to the defendant, and in the alternative, if there was a contract, that defendant breached it. *Id.* at 856. Plaintiff argued that the actions were not parallel because he sought damages in the federal lawsuit, but not in the Canadian suit. *Id.* The court rejected the argument, finding that plaintiff could have sought damages in the Canadian court by filing a counterclaim, and the fact that plaintiff did not do so did not give plaintiff the right to bring the entire proceeding into the United States court. *Id.*

The situation here is analogous. Multi Holsters brought a counterclaim in the Canadian suit arising out of the same facts surrounding the breakdown of the parties' efforts to form a joint venture that are pled in the federal lawsuit. Although Multi Holsters seeks to recover under Michigan and federal law, the claims arise out of the same material facts as the Ontario litigation, and thus, once the Canadian claims are resolved, principles of res judicata would bar Multi Holsters from relitigating those

claims here.  Given the duplicity of the federal and foreign claims, the interests of international comity favor abstention.  Unless this matter is stayed, the two cases will be proceeding on two tracks to resolve claims arising out of substantially similar, if not identical, facts.  Under that scenario, whichever matter is resolved first would require enforcement by the foreign court under principles of res judicata.  This is exactly the situation *Colorado River* abstention is designed to prevent.  In sum, all of the claims of the federal Complaint are parallel to the Ontario case.

The federal lawsuit also alleges statutory trade secret claims under Michigan and federal law which Multi Holsters alleges involve different remedies than those available under Ontario law.  Defendants dispute this claim.  Multi Holsters has failed to cite any authority in support of this claim and thus, the court does not give the argument much consideration.

Having found that the two actions are parallel, the court turns now to an analysis of the factors to be evaluated when determining whether abstention is warranted in the face of parallel proceedings.

**B.      Evaluation of the *Colorado River* Factors Supports a Stay**

Having found that Multi Holster's Michigan and federal claims pled here are parallel to the claims pending in Ontario, the court's evaluation of

the *Colorado River* factors leads to the conclusion that this court should enter a stay. The court discusses the eight factors below.

**1.    Jurisdiction over any Res or Property**

The foreign court has not assumed any jurisdiction over any res or property; thus, this factor is neutral.

**2.    Convenience of the Forum**

Tac Pro is an Ontario company and its owner Minuskin resides in Ontario. Multi Holsters' principal place of business is in Plymouth, Michigan. The parties agree that the difference in location is just a few hours' drive from one location to the other. Although Multi Holsters argues that much of the discovery will take place in the United States as that is where most of Multi Holster's sales take place, Defendants direct the court to Ontario's rules of civil discovery for the proposition that the Ontario court is equally suited to allow for necessary discovery, whether taken in Canada or the United States. This factor also appears to be neutral.

**3.    Piecemeal Litigation, Source of Law, and Protection of Plaintiff's Rights**

The court considers factors three, five and six together. There is no doubt that allowing these two lawsuits to proceed on two tracks, one in federal court and one in a foreign court, is not an optimal use of scarce

judicial resources, especially where the two suits involve substantially the same parties and claims.

Multi Holsters also claims the remedies available under MUTSA and the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 836 *et seq.* are broader than the remedies available under Canadian laws. Defendants dispute this point. Since neither party has cited to any Canadian law for the court's review, the court does not place much emphasis on Multi Holsters' argument that the remedies available for its Michigan and federal statutory trade secret claims are distinct from the remedies available for similar claims in Canada.

The avoidance of piecemeal litigation weighs heavily in favor of .abstention. The two lawsuits are nearly identical as they relate to the contractual dealings between the parties and the alleged misuse of confidential information. As discussed previously, based on the doctrine of res judicata, resolution of the Ontario case will require a stay of all the claims here. Because the same parties in the federal suit have been litigating the same conduct for over two years in Canada, the avoidance of duplicitous claims is paramount. Also, based on a choice-of-law provision in the Confidentiality and Non-Disclosure Agreement, the claim for breach of confidence and breach of fiduciary duty claims pending in Ontario are

governed by Ontario law, suggesting that Ontario is the more logical forum for adjudicating the parties' dispute.

## 4. Jurisdiction Obtained First and Relative Progress of Federal and Foreign Proceedings

The court considers factors four and seven together. The Ontario action commenced on October 16, 2014. Multi Holsters filed the instant suit on February 10, 2017. Despite the over two-year gap between the filing of the foreign and federal lawsuits, Multi Holsters argues that discovery is still ongoing in the Ontario suit, no dispositive motions have been filed, and no trial date has been set. Multi Holsters alleges that civil litigation in Canada can last as long as five years. Defendants respond that any delay in the Canadian case has been caused by Multi Holster's obstreperous conduct, and that Multi Holsters has failed to present any authority in support of its claim that Canadian litigation can span five years. In fact, on August 22, 2017, the Ontario Superior Court of Justice granted Tac Pro's motion for discovery and ordered that it be paid $1,000 for the costs incurred in bringing the motion. Defendants suggest that Multi Holsters is trying to take a "second bite at the apple" or to force Defendants to incur unnecessary legal fees. Without second guessing Multi Holster's motivations, and whatever the progress of the Canadian suit, it is clear that

the Ontario matter began over two years before the federal lawsuit was filed. Thus, this factor weighs heavily in favor of abstention.

## 5. Concurrent Jurisdiction

Multi Holsters alleges that either the federal court or the Ontario court can exercise jurisdiction over this dispute. Thus, this factor is neutral

## IV. Conclusion

As the Supreme Court noted in *Colorado River*, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 817. "Only the clearest of justifications will warrant dismissal." *Id.* at 819. Those justifications have been presented here because the federal and foreign action are parallel, and consideration of the factors outlined in *Colorado River* and *Moses H. Cone* lead to the conclusion that this court should defer to the Ontario court in the interests of international comity.

Although Defendants seek dismissal, the court finds the better approach is to stay this matter as "the Supreme Court has taught that when a federal court abstains in favor of a state court, entering a stay in the federal action is preferable to dismissing the action because the stay makes it easier for the federal court to resume its jurisdiction over the case should the state court to which it is deferring fail to decide the case for

some reason." *Grammar*, 482 F. Supp. 2d at 860 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995)). As in *Grammar*, the court finds the same reasoning applies when the federal court is deferring to the jurisdiction of a foreign court.

Accordingly, Defendants' motion to abstain based on *Colorado River* abstention (Doc. 4) is GRANTED and this matter is STAYED. The Clerk is ORDERED to administratively close this matter.

**IT IS SO ORDERED.**

Dated: September 15, 2017

                                              s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 15, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---